she known the money was to be applied to the payment of the debts of the lunatic, that fact and their actual application to the extinguishment of such debts would not entitle her to be subrogated to the claims of the creditors, whose debts were thus paid. In furnishing the money for the payment of the debts of Spencer C. Buckley, she was a mere volunteer. Neither she nor her property were in any way legally answerable for the claims paid. She was not in the situation of a surety, nor was she in any way compelled to pay them to protect her own rights. Viewed in the light most favorable to the mortgagee, she simply furnished the money to pay the debts of the lunatic,—debts for which she was not answerable, and the payment of which was not necessary in any way for her protection. These facts do not entitle her to subrogation. Banta v. Garmo, 1 Sandf. Ch. 385; Baldwin v. Moffett, 94 N. Y. 82; Acer v. Hotchkiss, 97 N. Y. 395; Koehler v. Hughes, 148 N. Y. 511, 42 N. E. 1051.

The doctrine of subrogation has not been carried so far as to hold that one who simply lends money to pay debts of another is entitled to be subrogated to the rights of the creditors whose debts are paid. If it were otherwise, it could, in this instance, be of no avail to the mortgagee, for the reason that, with the exception of the $500 Dwyer mortgage, the debts paid were simply contract debts, and no principle of subrogation could make them a lien on the real estate.

Nor can the mortgage be upheld as a lien on the ground that Dwyer, in his purchase from Buckley, orally agreed and assumed to pay the Gifford mortgage. There is no proof of such an oral agreement, and, if there were, it would be unavailable to the defendant Gifford, for the reason that it would be, at most, a promise to Buckley to pay a debt for which he himself was not personally liable. The case of the mortgagee is one of peculiar hardship, but the facts do not bring it within any principle of the doctrine of subrogation which can afford her relief, and I am of opinion that her mortgage should be adjudged to be invalid as a lien on the premises sought to be partitioned.

Ordered accordingly.

---

### ROCK v. CITY OF NEW YORK.

(Supreme Court, Trial Term, New York County. March, 1900.)

1. MUNICIPAL CORPORATIONS—EMPLOYES—APPOINTEES—WAGES.

   Acts 1894, c. 622, and Acts 1897, c. 415, declaring that mechanics, workmen, and laborers, working for the state or municipal corporations, or for a contractor holding a contract therewith, shall receive the prevailing rate of wages, has no application to a person holding a position by appointment and receiving a fixed salary.

2. SAME.

   Acts 1897, c. 415, § 3, declares that mechanics, workmen, and laborers employed by the state, municipal corporations, or a contractor holding a contract therewith, shall receive the prevailing rate of wages. Acts 1899, c. 567, amended such section by omitting the provision requiring state and municipal corporations to pay the prevailing rate of wages. *Held,*

that a municipal employé could not recover such rate of wages against the city employing him, since Act 1899 repealed all rights of such employés of municipal corporations arising from the act of 1897.

3. SAME—VESTED RIGHTS.

The right of an employé of a municipal corporation to receive the prevailing rate of wages, as provided by Acts 1897, c. 415, § 3, was not a vested right, but a mere right given by the statute; and, such right having been taken away by the repeal of such act by Acts 1899, c. 567, a city employé was not entitled to recover the prevailing rate of wages for services rendered prior to such repeal in an action subsequently brought.

Action by George Rock against the city of New York to recover the prevailing rate of wages. The complaint was dismissed, and plaintiff filed a motion for a new trial. Overruled.

Ingle Carpenter and Carlos C. Alden, for plaintiff.
John Whalen and Chas. Blandy, for defendant.

McADAM, J. The acts of 1894 (chapter 622) and 1897 (chapter 415) apply only to mechanics employed in the usual way to do laboring work, and not to an appointee, like the plaintiff, holding under a yearly employment at a fixed salary, and furnished with board and lodging without charge by the municipality. A person situated as the plaintiff was is not brought into competition with skilled painters, seeking daily or weekly employment, so that he is clearly not within the reason or purpose of the law, which, in consequence, does not apply. McCunney v. City of New York, 40 App. Div. 482, 58 N. Y. Supp. 138. The act of 1894, supra, was expressly repealed on the passage of the act of 1897, supra (1 Laws 1897, p. 501), and the latter act was in turn repealed by the act of 1899 (chapter 567), not in express terms, but by necessary implication,—a question which will be hereinafter discussed. The act of 1894, in regard to prevailing wages, expressly provides that all mechanics, workingmen, and laborers "employed by the state or any municipal corporation," or in the employ of persons contracting with the state or such corporation, for performance of public works, "shall receive not less than the prevailing rate of wages" in their respective callings. The act of 1897 (section 3), after referring to public works, provides that "the wages for such public work shall be not less than the prevailing rate for a legal day's work in the same trade or calling in the locality where the work is performed," and expressly declares that "this section applies to work for the state or a municipal corporation," or for contractors thereof. The act of 1899 amends section 3 of the act of 1897, by altering and reconstructing the entire section and making the same read as amended. As reconstructed, that portion of former section 3 which provided that it applied "to work for the state or a municipal corporation" was eliminated, for the evident purpose of relieving the state and municipal corporations from the rule relating to prevailing wages, and the reconstructed section requires the state and municipal corporations to observe the following provisions:

(1) "Each contract to which the state or a municipal corporation is a party which may involve the employment of laborers, workmen, or mechanics, shall

contain a stipulation that no laborer, workman, or mechanic, in the employ of the contractor, subcontractor, or other person, doing or contracting to do the whole or a part of the work contemplated by the contract shall be permitted or required to work more than eight hours in any one calendar day," etc. (2) "The wages to be paid for a legal day's work, as hereinbefore defined to all classes of such laborers, workmen or mechanics upon all such public work or upon any material to be used upon or in connection therewith, shall not be less than the prevailing rate for a day's work in the same trade or occupation in the locality within the state where such public work on, about or in connection with which such labor is performed in its final or completed form is to be situated, erected or used. Each such contract hereafter made shall contain a stipulation that each such laborer, workman or mechanic employed by such contractor, subcontractor or other person on, about or upon such public work shall receive such wages herein provided for. Each contract for such public work hereafter made shall contain a provision that the same shall be void and of no effect unless the person or corporation making or performing the same shall comply with the provisions of this section," etc.

The expression, "upon all such public work," refers to work to be done by contractors, and not by the state or a municipal corporation without the agency of contractors. The legislature did not intend to hamper the operations of state or local government with the provisions of the act further than to require contractors while engaged on public works to stipulate in their contracts to pay the mechanics employed on the job wages at the rate prevailing in the locality. That the re-enactment operated as a repeal of section 3 of the act of 1897 is clear, both upon principle and authority. The section, as reconstructed in 1899, deals with great particularity with every phase of the question of prevailing wages, but was careful to omit the words contained in the section as it formerly existed, declaring that it applied to work "for the state or a municipal corporation"; showing a clear legislative intent to abrogate that provision. A subsequent statute repugnant to a prior one, repeals it; and if a subsequent statute be not repugnant, in all its provisions, to a prior one, yet, if the last was clearly intended to prescribe the only rule that should govern, it repeals the former one. Plank-Road Co. v. Allen, 16 Barb. 15; People v. City of Brooklyn, 69 N. Y. 605; In re Rochester Water Com'rs, 66 N. Y. 413, 421, 422. A statute which is amended and re-enacted so as to read as prescribed in the amendatory statute is thereby wholly annulled as to all future cases, and, except as to rights and duties already existing, becomes merged and incorporated in the later statute. People v. Wilmerding, 136 N. Y. 363, 32 N. E. 1099; People v. Jaehne, 103 N. Y. 182, 8 N. E. 374; People v. City of Brooklyn, supra; McDermott v. Railroad Co., 85 Hun, 422, 32 N. Y. Supp. 884. An act which amends an existing statute "so as to read as follows," thereupon enacting a new and substituted provision, repeals all the former statute omitted from the act as amended. Moore v. Mausert, 49 N. Y. 332; People v. Board of Assessors of City of Brooklyn, 84 N. Y. 610. There is no such thing as a vested right in a public law which is not in its nature a grant or a contract. Whatever cause of action was acquired under the acts of 1894 and 1897 was not given by grant or contract (McCarthy v. Mayor, etc., 96 N. Y. 1), but by force of those statutes. They conferred inchoate, but not vested, rights, and the repeal of those acts in 1899 effectually terminated

all legal claim to a recovery thereunder. Washburn v. Franklin, 35 Barb. 599; Hoppock v. Stone, 49 Barb. 524; Butler v. Palmer, 1 Hill, 324. The only theory on which the municipality could be held under said acts was that an employment of a mechanic at a fixed compensation less than the "prevailing rate" was contrary to the provisions of said acts, and as to such compensation, fixed in violation of law, the contract was void. So considered, the repeal of the acts creating the illegality legalized the contract as effectually as if said acts had never been passed (Washburn v. Franklin and Hoppock v. Stone, supra; Curtis v. Leavitt, 15 N. Y., at page 152), and at the same time devested all inchoate rights which arose under the acts repealed. Hoppock v. Stone and Curtis v. Leavitt, supra. In conclusion, the court holds that the repeal of the acts of 1894 and 1897 defeats any right of action thereunder, and that no right whatever exists against the municipality under the act of 1899.

The complaint was therefore properly dismissed, and the motion for a new trial must be denied.